William **PEGUES, Jr., a/k/a Larry O.**
**Light, a/k/a Larry Germany,**
**Appellant,**

v.

**UNITED STATES, Appellee.**

No. 13887.

District of Columbia Court of Appeals.

Argued April 10, 1980.
Decided May 29, 1980.

Mary Ellen Ashton, Washington, D. C., appointed by the court, for appellant.

Cary M. Feldman, Asst. U. S. Atty., Washington, D. C., with whom Carl S. Rauh, U. S. Atty. at the time the brief was filed, John A. Terry, Michael W. Farrell and Richard C. Otto, Asst. U. S. Attys., Washington, D. C., were on the brief, for appellee.

Before KELLY, KERN and HARRIS, Associate Judges.

KELLY, Associate Judge:

Appellant was convicted by a jury of armed robbery (D.C.Code 1973, §§ 22–2901, –3202), assault with a dangerous weapon (D.C.Code 1973, § 22–502), assault on a police officer while armed (D.C.Code 1973, §§ 22–505, –3202), and carrying a pistol without a license (D.C.Code 1973, § 22–3204). On appeal he claims that the trial judge's failure to rule before trial on the sufficiency of his insanity defense deprived him of his rights to present a defense and to testify in his own behalf, and that the trial judge was without power to remove the insanity question from the jury. We find no error and affirm.

The evidence at trial showed that appellant, who escaped from the John Howard Pavilion at St. Elizabeths Hospital in December of 1976, robbed Mr. Victor Daigle of approximately $150 on February 20, 1977. He was apprehended after being chased for several blocks by Daigle and a detective. One hundred and twenty dollars was recovered from appellant; the remaining money and appellant's gun were found nearby. Appellant presented no evidence.[1]

Before trial, defense counsel informed the court that appellant insisted on presenting an insanity defense, even though counsel advised him that the evidence would not

---

1. Appellant's defense at trial was a challenge of the government's evidence. Defense counsel stated to the court before trial that appellant refused to discuss anything but an insanity defense.

support the defense.[2] After hearing counsel's proffer of two psychiatric reports, the judge made the following ruling:

I propose that we go forward with the issue of the defendant's guilt or innocence in this matter. After we get a verdict in the case, and if the verdict is guilty, at that time I will address . . Mr. Pegues out of the presence of the jury and ask him . . . if he wants the issue of insanity presented to the jury—in other words, a bifurcated trial.

\* \* \* \* \* \*

I'm not saying that I'm going to [submit the defense to the jury] because I don't believe it has been submitted in compliance with the rules regarding an insanity defense, plus the fact that Mr. Smith indicates that there is no basis for the submission of such a question to the jury. As I say, that option can remain open for the moment.

Is there any objection to that by anybody?

MR. SMITH: No, Your Honor.

MR. OTTO: No, Your Honor.

When the jury retired to deliberate, the court considered the insanity issue. Defense counsel proffered the testimony of two psychiatrists, both of whom found appellant to be suffering from a residual mental illness, but neither of whom could conclude that, as a result of his mental illness, appellant lacked substantial capacity on the day of the offenses to conform his conduct to the law or to recognize the wrongfulness of his acts.[3] Appellant proffered his own testimony:

MR. PEGUES: At that time, I wasn't feeling well. I was hearing voices and I was real sick, and I didn't stay in Washington. I went to Philadelphia. I made two trips there and after—after the escape, I made two trips there. I didn't stay in Washington. I came back to Washington and went back to Philadelphia and then came back to Washington and I wanted to escape the whole town; I was ill. I'm not a psychiatrist but I was ill.

I was arrested and when I was arrested, I was walking down the street. I didn't testify today because I saw no need. I was walking down the street and I heard a shot and I ducked under a car. After the car—I saw the car the shots were coming from and it looked like a police car. It had one of those spotlights on the side and I started running. I ran underneath—I don't know what it was, but it was a basement area and I knocked on a window, trying to get in and nobody came to the door and then the—the dog and the policemen came over and the dog attacked me. I asked the policeman to pull his dog off and he didn't do it and the dog didn't hurt me very much, but he tore my clothing.

The reason for the insanity plea is because I didn't do any—I didn't commit any robbery; I didn't fire any guns; I wasn't feeling well. I was real sick at the time all this went on.

THE COURT: You say you were ill. Describe your illness. How did you feel when you say you felt ill? How did you feel at that time?

MR. PEGUES: Headache, stomach ache.

THE COURT: Is that it?

MR. PEGUES: There's probably a lot of other things. I was cold.

THE COURT: Is that what you would tell a jury, Mr. Pegues, if I were to allow them to consider this defense of insanity? Is that what you would tell a jury, what you just told me?

2. The same day, defense counsel requested and received a competency evaluation of appellant. He was found competent to stand trial; the finding was uncontested.

3. Appellant was examined by a psychiatrist from St. Elizabeths Hospital and by an independent psychiatrist appointed by the court pursuant to D.C.Code 1978 Supp., § 11–2605(a).

MR. PEGUES: Yes, sir.

Defense counsel stated that there were no expert or lay witnesses who could support the insanity defense. The judge concluded that there was insufficient evidence to establish a prima facie case and ruled that appellant could not present the defense.

Appellant's first argument is that the trial judge, by deferring his ruling on the sufficiency of the insanity defense until after the trial on the merits, deprived appellant of his rights to testify in his own behalf and to present a defense.[4] He argues that, had he known before trial that the judge was not going to grant a bifurcated proceeding, he would have taken the stand and presented his insanity evidence during trial.

■■■ We need not decide whether deferred consideration of a properly presented bifurcation motion[5] or of the sufficiency of an insanity defense is proper in every case, for on this record, we find no error. The trial judge fully informed appellant that he might not allow the defense, both because it appeared to be without evidentiary support

and because there was no timely notice of the defense.[6] Appellant was not precluded from presenting any defenses or from testifying; he could have done so at any time. Moreover, in our opinion, the action taken by the trial judge effectively granted appellant a bifurcated trial—he had a trial on the merits, at which he could have presented any available defenses, and he was given the opportunity to proffer sufficient evidence of an insanity defense to entitle him to a separate adjudication of that issue. On this record, we find no error in the judge's ruling.

Appellant also argues that the trial judge was without power to remove the insanity question from the jury. He contends that, once he showed "some evidence" of insanity, the question had to be presented to the jury.[7]

■■■ In this jurisdiction, the defendant has the burden of proving insanity by a preponderance of the evidence. D.C.Code 1973, § 24–301(j). If he fails to present a prima facie case, the judge is justified in removing the issue from the jury. *See Coo-*

4. Appellant cites *Faretta v. California*, 422 U.S. 806, 95 S.Ct. 2525, 45 L.Ed.2d 562 (1975), for the proposition that the Sixth Amendment guarantees a defendant the right to present a defense. However, *Faretta* dealt only with a defendant's right to represent himself; the Supreme Court has not held that a defendant has a constitutional right to present an insanity defense. *See Frendak v. United States*, D.C. App., 408 A.2d 364, 378 n.24 (1979).

5. No formal bifurcation motion was made in this case. The issue arose when defense counsel expressed his concern over appellant's competency to stand trial. Even construing the pretrial discussion as a bifurcation motion, we find no error. The burden is on the defendant to show that he has a substantial insanity defense and that it has a prejudicial effect on his other defenses. *Holmes v. United States*, 124 U.S.App.D.C. 152, 363 F.2d 281 (1966). Appellant did not meet these prerequisites.

6. D.C.Code 1973, § 24–301(j) requires a defendant to submit notice of his intention to rely on an insanity defense to the court and to the government at arraignment or within fifteen days thereafter. No notice was served in this case.

7. Appellant's reliance on *Clark v. United States*, 104 U.S.App.D.C. 27, 259 F.2d 184 (1958), and *Tatum v. United States*, 88 U.S. App.D.C. 386, 190 F.2d 612 (1951), is misplaced. Those cases were decided when, in this jurisdiction, the burden was on the government to prove that a defendant was sane once the defendant presented "some evidence" of insanity. Today, however, the defendant must present a prima facie case of insanity before he can survive a government request for a directed verdict on the issue. *See Cooper v. United States*, D.C.App., 368 A.2d 554, 559–60 (1977). Appellant's reliance on *United States v. Tyler*, D.C.App., 376 A.2d 798 (1977), is both substantively and procedurally improper. In the cited opinion, a division of this court held that it was error for the judge to direct a verdict of insanity in the defendant's *favor*; once he presented a prima facie case, the question became one for the jury. The division's opinion was later vacated, however, and the en banc court dismissed the appeal on other grounds. *United States v. Tyler*, D.C.App., 392 A.2d 511 (1978).

per v. United States, D.C.App., 368 A.2d 554, 559–60 (1977). To establish a prima facie case, the defendant must present sufficient evidence to show that, at the time of the criminal conduct, as a result of a mental illness or defect, he lacked substantial capacity to recognize the wrongfulness of his act or to conform his conduct to the requirements of the law. *Bethea v. United States*, D.C.App., 365 A.2d 64, 79 (1976), *cert. denied*, 433 U.S. 911, 97 S.Ct. 2979, 53 L.Ed.2d 1095 (1977).

■ Appellant's proffer, consisting of two psychiatric reports and his own testimony, lacked a critical element of the defense—a causal relationship between the criminal conduct and his mental disease. Although both psychiatrists found appellant to be suffering from a residual mental disease, neither could conclude that the acts of February 20, 1977, were causally related to his mental illness. Had appellant testified and presented all of his evidence to the jury, the government would have been entitled to a directed verdict on the issue of insanity. We agree with the trial judge that allowing appellant to present his proffered testimony to a jury would have been a "waste of time," [8] and, consequently, find no abuse of discretion in his refusal to allow the defense. *See Clyburn v. United States*, D.C.App., 381 A.2d 260, 264 (1977), *cert. denied*, 435 U.S. 999, 98 S.Ct. 1656, 56 L.Ed.2d 90 (1978).

*Affirmed.*