Robert JENNINGS, Jr., Appellant,

v.

UNITED STATES, Appellee.

Ronald JENNINGS, Appellant,

v.

UNITED STATES, Appellee.

Andre R. SPRINGS, Appellant,

v.

UNITED STATES, Appellee.

Nos. 14122, 14241 and 14130.

District of Columbia Court of Appeals.

Argued Feb. 20, 1980.

Decided May 21, 1981.

Joseph J. Trepel, Washington, D.C., appointed by this court, for appellant Robert Jennings, Jr.

Charles Rosenbleet, Washington, D.C., appointed by this court, for appellant Ronald Jennings.

Martin S. Echter, Washington, D.C., appointed by this court, for appellant Springs.

Martha P. Rogers, Asst. U. S. Atty., Washington, D.C., with whom Carl S. Rauh, U. S. Atty., Washington, D.C., at the time the briefs were filed, and Peter E. George and Reggie B. Walton, Asst. U. S. Attys., Washington, D.C., were on the brief, for appellee.

Before NEWMAN, Chief Judge, and KELLY and MACK, Associate Judges.

MACK, Associate Judge:

After a jury trial, each appellant was convicted of ten counts of armed robbery, two counts of armed burglary in the first degree, one count of armed burglary in the second degree, two counts of assault with intent to commit robbery while armed and one count of carrying a pistol without a license. Because we agree with appellant Springs' contention that the government failed to produce sufficient evidence to establish an essential element of the first-degree burglary offenses, we reverse the convictions of appellants on those charges and remand to the trial court with instructions to enter judgments of conviction on second-degree burglary and to resentence appellants on those counts. Finding no merit to the remainder of appellants' allegations, we affirm all other convictions.

Appellants were tried [1] in connection with the armed burglary of the Wynette Parks "Tourist Home," which was apparently used exclusively as a base for a prostitution operation, and with the armed robbery of the patrons and employees therein. Evidence adduced at trial indicated that on May 2, 1977, the appellants and Jon Miles, at gun point, compelled Shelley Delaney, a prostitute who operated out of the tourist home, to provide them with access into the structure. Having gained entry, the principals proceeded first to rob the patrons and employees present in the first-floor lobby and waiting area, and then to accord the same treatment to two prostitutes and their clients occupying two separate second-floor bedrooms.

## I.

Appellant Springs maintains that the trial court erred in denying his motion for judgment of acquittal on the first-degree burglary counts since the government produced no evidence to establish that the second-floor bedrooms entered were bona fide sleeping rooms.[2] The government concedes[3] that insufficient evidence was

---

1. Another principal in the offenses, Jon Miles, pleaded guilty prior to trial.

2. The entry of each bedroom was charged as a separate count of first-degree burglary.

3. Although only appellant Springs raises the insufficiency issue on appeal, the government, in its brief, concedes that it failed to produce sufficient evidence to support first-degree burglary convictions. In light of this concession,

presented to bring the bedrooms within the ambit of D.C. Code 1973, § 22–1801(a).[4]

▮ To weather a motion for judgment of acquittal, the prosecution must adduce at least some probative evidence on each of the essential elements of the crime. *Moore v. United States,* D.C.App., 388 A.2d 889 (1978). One of the essential elements of first-degree burglary is that the compartment or structure entered was either a sleeping apartment or a dwelling. Our review of the record supports the contention that the government failed to offer evidence establishing the character of the second-floor bedrooms. If anything, the evidence indicated a contrary result; the rooms were apparently used solely for purposes of consummating prostitution transactions and were occupied essentially for periods of short duration (*e. g.,* fifteen minutes to a half-hour). Under these circumstances, we conclude that the trial court erred in denying appellants' motions for judgment of acquittal with respect to the first-degree burglary counts and that those convictions, therefore, must be reversed. However, we also remand the cases to the trial court with instructions.

▮ This court has on several occasions modified judgments of the Superior Court when the government, although failing to produce sufficient evidence of an essential element of an offense, has produced sufficient evidence to support a conviction for a lesser-included offense. *See, e. g., Williams v. United States,* D.C.App., 376 A.2d 442 (1977) (although proof supporting grand larceny conviction was deficient, case was remanded with instructions to enter judgment of conviction of petit larceny); *Cooper v. United States,* D.C.App., 368 A.2d 554 (1977) (case remanded with instructions to enter judgment of conviction of second-degree murder where proof of first-degree murder was deficient). In the instant case, the government produced abundant evidence to establish that appellants entered a building and rooms with the intent to commit a criminal offense (*viz,* robbery), thus supporting convictions of second-degree burglary. Accordingly, we reverse the first-degree burglary convictions and remand to the Superior Court with instructions to enter judgments of conviction of second-degree burglary and to resentence appellants on those counts.

## II.

Appellants raise numerous additional trial and pretrial errors. While we find none of merit, we do wish to address several of the issues raised.

Appellant Robert Jennings contends that the trial court erred in denying his motion for severance.[5] In that motion and in his accompanying brief, appellant alleged that he would be prejudiced by joinder in several ways: the confessions and testimony of his

---

we will apply our analysis and disposition on this issue to all three appellants.

4. Section 22–1801 provides:

(a) Whoever shall, either in the nighttime or in the daytime, break and enter, or enter without breaking, any dwelling, or room used as a sleeping apartment in any building, with intent to break and carry away any part thereof, or any fixture or other thing attached to or connected thereto or to commit any criminal offense, shall, if any person is in any part of such dwelling or sleeping apartment at the time of such breaking and entering, or entering without breaking, be guilty of burglary in the first degree. Burglary in the first degree shall be punished by imprisonment for not less than five years nor more than thirty years.

(b) Except as provided in subsection (a) of this section, whoever shall either in the night or in the daytime, break and enter, or enter without breaking, any dwelling, bank, store, warehouse, shop, stable, or other building or any apartment or room, whether at the time occupied or not, or any steamboat, canalboat, vessel, or other watercraft, or railroad car or any yard where any lumber, coal, or other goods or chattels are deposited and kept for the purpose of trade, with intent to break and carry away any part thereof or any fixture or other thing attached to or connected with the same, or to commit any criminal offense, shall be guilty of burglary in the second degree. Burglary in the second degree shall be punished by imprisonment for not less than two years nor more than fifteen years.

5. Robert Jennings moved for severance both prior to and during trial.

codefendants would deny him a fair trial; he would maintain a defense inconsistent with that of his codefendants; and his mere acquaintance with them would interfere with his right to have his guilt or innocence determined on an independent basis. On appeal, appellant claims that his defense hinged on the argument "that the police were trumping up a charge against him to elicit his aid in finding his brother Ronald Jennings, an escaped convict who had murdered a District of Columbia policeman." Appellant asserts that as a result of the trial court's refusal to sever, he lost the right to develop his defense fully and his brother was prejudiced by disclosure to the jury of his prior criminal conduct.

When two or more defendants are charged with jointly committing a criminal offense, there is a strong presumption that they will be tried together. *Cunningham v. United States*, D.C.App., 408 A.2d 1240 (1979); *Christian v. United States*, D.C. App., 394 A.2d 1 (1978), *cert. denied*, 442 U.S. 944, 99 S.Ct. 2889, 61 L.Ed.2d 315 (1979). The presumption arises because joinder serves to expedite the administration of justice, reduce congestion of trial dockets, conserve judicial time, lessen the burdens upon citizens who must sacrifice both time and money to serve as jurors, and avoid the necessity of recalling witnesses who would otherwise be called upon to testify only once. *Johnson v. United States*, D.C.App., 398 A.2d 354 (1979); *Baxter v. United States*, D.C.App., 352 A.2d 383 (1976).

Superior Court Criminal Rule 14 provides that a trial court may order a severance or provide whatever other relief justice requires when a defendant is prejudiced by a joint trial. The grant or denial of a motion for severance rests within the broad discretion of the trial court, and we will reverse only upon a showing of an abuse of that discretion. *Sousa v. United States*, D.C.App., 400 A.2d 1036, *cert. denied*, 444 U.S. 981, 100 S.Ct. 484, 62 L.Ed.2d 408 (1979). Moreover appellant must prove that his rights have been prejudiced by the denial of the motion for severance. *Cun-*

*ningham v. United States, supra; Clark v. United States*, D.C.App., 367 A.2d 158 (1976).

The thrust of appellant Robert Jennings' argument is that he was hindered in fully developing his defense due to joinder. The defense he presented at trial was, in essence, innocent presence at the scene of the crime. On the other hand, Ronald Jennings' defense was basically alibi, e. g., mistaken identity and absence from the scene.

When defendants present conflicting and irreconcilable defenses and there is a danger that the jury will unjustifiably infer that this conflict alone demonstrates that both are guilty, severance is required. *Rhone v. United States*, 125 U.S.App.D.C. 47, 365 F.2d 980 (1966); *Johnson v. United States, supra*. The defenses asserted by Robert and Ronald Jennings were not conflicting or irreconcilable. Our review of the record fails to support Robert Jennings' contention that he was hindered in developing his defense because he was jointly tried with his brother. Moreover, we are unable to conclude that appellant Robert Jennings was substantially prejudiced by joinder or that the trial court abused its discretion in denying appellant's motion for severance.

### III.

Robert Jennings also claims that he was denied effective assistance of trial counsel. In a related claim, appellant Ronald Jennings asserts that the same ineffectiveness of his brother's counsel denied him a fair trial.

In support of his claim that he was denied effective assistance of counsel, Robert Jennings contends, *inter alia*, that: counsel's fruitless and harmful cross-examination of government witnesses weakened his brother's defense and thereby "weakened" his own defense; counsel's closing argument was "defective" thus denying him a fair trial; and counsel's pursuit, in the absence of evidence, of the unsuccessful defense that his client was being "framed" by the authorities "cost the appellant any credibility he might have had with the jury

and was probably a large factor in his conviction." [6]

■ To prevail on the claim of ineffective assistance of counsel, a defendant must demonstrate that counsel's gross incompetence in effect blotted out the essence of a substantial defense. *Oesby v. United States*, D.C.App., 398 A.2d 1 (1977); *Angarano v. United States*, D.C.App., 312 A.2d 295 (1973), *pet. for rehearing denied*, 329 A.2d 453 (1974); *Bruce v. United States*, 126 U.S.App.D.C. 336, 379 F.2d 113 (1967). Appellant bears a heavy burden in proving prejudice, *see Mangrum v. United States*, D.C.App., 418 A.2d 1071 (1980), and he must demonstrate that the substantial defense lost because of counsel's incompetence is a defense as a matter of law and one that is available from facts known or obvious to the trial attorney. *See Woody v. United States*, D.C.App., 369 A.2d 592 (1977); *Angarano v. United States, supra.*

■ Appellant fails to specify any substantial defense which was blotted out by counsel's alleged ineffectiveness. As has been noted, appellant's primary defense was innocent presence. This defense was developed at trial and argued to the jury. Although counsel's stewardship was not the model of trial advocacy, since the main thrust of appellant's defense was presented, *see Cunningham v. United States, supra,* and appellant cannot specify nor can we discern any substantial defense that was blotted out, *see White v. United States*, D.C.App., 358 A.2d 645 (1976), we conclude that counsel's action did not deprive Robert Jennings of his right to counsel.

## IV.

In a similar vein, Ronald Jennings contends that his defense was undermined and his right to a fair trial denied by the conduct of his brother's counsel. He therefore concludes that the trial court erred in denying his motions for relief from prejudicial joinder, for mistrial and for a new trial.

■ The incidents of trial conduct upon which appellant bases his claim largely consist of counsel's "inept" cross-examination of police officers Linda Butler and Donald Lyddane and government witnesses Dawn Gambrini and Dennis Goldberg. The police officers' testimony placed appellant Ronald Jennings at the tourist home. Cross-examination by appellant's counsel raised some doubt concerning the officers' ability to observe appellant. Upon cross-examination by counsel for Robert Jennings, however, both officers qualified their testimony to resolve any inconsistencies. Dawn Gambrini and Dennis Goldberg, victims of the tourist home robbery, identified appellant Ronald Jennings at a police lineup. Ronald Jennings' counsel sought to establish that the lineup was suggestive but, appellant contends, this line of attack was thwarted by the "illogical," "confusing" and "confounding" manner by which his brother's counsel cross-examined those witnesses.

When assessing appellant's claim, we determine whether the questioned conduct resulted in actual prejudice to him to the extent that a new trial is necessitated. *See Oesby v. United States, supra.* Mere inconvenience in presenting one's case to the jury is insufficient to require reversal. *Id.* We do not believe the conduct here complained of required reversal.

Counsel's cross-examination of the government witnesses occurred, naturally, prior to redirect examination by the government. In the instant case, the government employed redirect to clarify any uncertainty which may have arisen regarding Officer Butler's ability to observe the individual exiting from the front door of the tourist home and the certainty with which she identified appellant as that indi-

---

6. Contrary to appellant's assertion that no evidence was adduced to support the defense that he was "framed," his own testimony brought before the jury evidence upon which the defense was founded. We have stated in the past that mere errors in judgment or tactical decisions which later backfire do not constitute gross incompetence. *Evans v. United States*, D.C.App., 392 A.2d 1015 (1978). While counsel's pursuit of the "frame" defense may have been ill-advised absent stronger corroborating evidence, we cannot conclude on the basis of this record that his representation rises to the level of constitutional deficiency.

vidual. Moreover, the prosecution produced abundant evidence to overcome the alibi defense appellant pursued and to establish his presence at the tourist home on the night of the robbery. The overall record evidences the firm rein the court maintained on the trial proceedings, and at no time was there comment by the court reflecting upon the merits of appellant's case. *See Oesby v. United States, supra.* Although the tactics and strategy employed by his brother's counsel frequently did not promote the interests of Ronald Jennings, we are unable to conclude that any resulting inconvenience rose to the level of reversible error. Consequently, we hold that the trial court did not abuse its discretion in denying Ronald Jennings' motions for relief from prejudicial joinder, for mistrial or for a new trial.

## V.

Appellant Ronald Jennings next contends that the trial court erred in admitting into evidence identifications of him made by Dawn Gambrini and Dennis Goldberg. Appellant's argument, which he also maintained during the pretrial suppression hearing, is that the pretrial identification procedures employed by the government were suggestive and created a substantial likelihood of misidentification.

During the morning of June 22, 1978, Dawn Gambrini and Dennis Goldberg were shown a photo of a police lineup. Each identified the man wearing shield number four, *viz* Robert Jennings, as one of the participants in the May burglary/robbery.[7] Later that afternoon, the witnesses attended a live lineup in which each identified Ronald Jennings, who was also wearing shield number four, as another participant. The record indicates that Ronald and Robert were similar in appearance. Ronald Jennings contends that it was his number four designation in the lineup, following so

closely the number four designation of his brother in the earlier photo lineup and given their similar appearance, that constituted the suggestive lineup practice creating a substantial likelihood of misidentification.

When an in-court identification is challenged under the Fifth Amendment due process clause on the basis of a "suggestive" pretrial identification procedure, two main inquiries are undertaken. First, the court must determine whether the identification procedure employed was unnecessarily suggestive and conducive to irreparable misidentification. *See Stovall v. Denno,* 388 U.S. 293, (1967); *Patterson v. United States,* D.C.App., 384 A.2d 663 (1978). Once unnecessary suggestiveness is found, it must be determined, considering the totality of the circumstances, whether the resulting identification nonetheless was reliable. *See Manson v. Brathwaite,* 432 U.S. 98, 97 S.Ct. 2243, 53 L.Ed.2d 140 (1977); *Neil v. Biggers,* 409 U.S. 188, 93 S.Ct. 375, 34 L.Ed.2d 401 (1972). The factors which comprise the "totality of the circumstances" include opportunity of the witness to view the defendant as the crime took place; the witness' degree of attention; discrepancies between the description and the defendant's actual appearance; other previous identifications of, or failures to identify the same defendant; the witness' level of certainty; and the time between the crime and the identification. *See Manson v. Brathwaite, supra; Neil v. Biggers, supra; Patterson v. United States, supra.*

In the instant case, Judge Braman found that the positioning of Ronald Jennings as the fourth suspect in the lineup, given the same positioning of his brother in an earlier lineup (photo) that day, entailed a degree of suggestiveness.[8] The court however found that the totality of the circumstances established an "independent source" to support admissibility.[9] We agree with

7. Dawn Gambrini also identified Jon Miles from the lineup photo.

8. Judge Braman did not specifically conclude that the procedure was "unduly" suggestive.

9. The term "independent source" has traditionally been used in the context of Sixth Amendment right to counsel violations; in Fifth Amendment due process opinions the question is characterized as one of "reliability," although for all intents and purposes the consid-

Judge Braman's analysis that the procedure employed was somewhat suggestive. However, even if we were to find that the suggestiveness was unnecessary and conducive to irreparable misidentification, we would be unable to conclude that admission of Dawn Gambrini's and Dennis Goldberg's identifications violated appellant's right to due process.

 A violation of the Fifth Amendment will not occur in the absence of the introduction at trial of unreliable evidence. Thus, a defendant's due process rights will be protected if a witness' ability to identify is shown to be reliable irrespective of any suggestiveness at pretrial identification. Assessing the facts in light of the factors enunciated in *Manson v. Brathwaite, supra,* and *Neil v. Biggers, supra,* we conclude that the opportunity of the witnesses to view Ronald Jennings as the crime took place and their degree of attention were good. Dennis Goldberg testified that he was in the presence of Ronald Jennings for a period of fifteen to twenty minutes, he got as close as two to three feet from him and that Jennings was not wearing any disguises. Although the lighting in the lounge or waiting room of the tourist home was not bright, Goldberg testified that there were no obstructions to his vision and that during the fifteen to twenty minute period he was exposed to the Jennings brothers, he "got their faces locked into [his] mind." At one point during the suppression hearing, which occurred fifteen months after the robbery, Goldberg stated that he could not distinguish which brother was which, *i. e.,* which one performed which tasks during the robbery, but he was sure that both had participated.

Dawn Gambrini's testimony practically paralleled Dennis Goldberg's. She had viewed Ronald Jennings for approximately fifteen to twenty minutes under the same conditions. She testified at the suppression hearing that "The guy that stepped on my head [Ronald Jennings], I saw him, because I had been looking at him all the time he was searching other people .... I saw him plenty. I saw him for at least 15 minutes."

 The record reveals no prior descriptions of appellant by the witnesses thus a comparison between his appearance and such accounts cannot be undertaken. Neither witness misidentified appellant nor did they fail to identify appellant either at the lineup, the suppression hearing or at trial, although Dawn Gambrini was unable to identify at the suppression hearing a picture taken of the lineup that occurred over one year previous. Each witnesses' level of certainty was high, and while the period between the crime and the initial identification (seven weeks) was not exactly prompt, it was by no means unreasonably lengthy given the fact that appellant was not immediately apprehended.[10]

 Under the totality of the circumstances, the identification testimony of Dawn Gambrini and Dennis Goldberg was reliable irrespective of any suggestiveness of the initial lineup they attended. We conclude, therefore, that appellant's Fifth Amendment right to due process was not violated by admission of the identifications.

### VI.

The final issue we wish to address is appellant Robert Jennings' contention that the trial court erred in restricting his opening statement. The government filed a pretrial motion to limit the presentation of his case on the basis that it would prejudice his brother if left unaltered. Appellant's proposed defense, as stated *supra,* was that the police were "framing" him solely to compel his cooperation in securing the apprehension of his brother, an escaped convict. The trial court ruled that although appellant could mention Ronald Jennings' status as an escapee as a component of the "frame-up" defense, he could not, *prior to* presentation of the government's case-in-

---

erations are the same. *See Patterson v. United States, supra* at 666 n.2.

**10.** Ronald Jennings had been in custody for less than a month before the lineup was conducted.

chief, disclose that Ronald Jennings had previously killed a police officer. In the event, however, that appellant bolstered his defense[11] either by development of evidence on cross-examination or by a proffer to the court that he would testify regarding the police design, he would have been allowed to make a supplemental opening statement prior to presenting his defense. Appellant, in fact, did address the jury prior to presenting his case and stated that his "frame-up" defense was grounded on the authorities' desire to apprehend his brother who was on "escape status."

■■■■ The function of a defendant's opening statement is to enable him to inform the court and jury what he expects to prove and to frame the questions and issues with which the jury will be confronted. *See Hampton v. United States*, D.C.App., 269 A.2d 441 (1970). We have held that in a criminal case tried to a jury, defense counsel has the right to make an opening statement. *Id.* However, the scope and extent of defendant's opening statement rests largely within the discretion of the trial judge. *See generally* 23 C.J.S. *Criminal Law* § 1086 (1961); *see also United States v. Freeman*, 514 F.2d 1184 (10th Cir.1975).

■■■■ We conclude that the limitation imposed on appellant's opening statement does not warrant reversal. Here, we are not confronted with a situation where the right to make an opening statement was denied. Appellant's frame-up defense was presented to the jury during his supplemental opening statement, and he was merely prohibited from disclosing the nature of the criminal offenses on which his brother was being held. Moreover, the appellant testified concerning the defense. The verdict obviously turned on an issue of credibility and clearly the jury did not credit appellant's testimony in reaching a finding of

guilt. *See Thompson v. United States*, D.C. App., 263 A.2d 264 (1970). On the state of this record, we are unable to discern any appreciable prejudice to appellant which may have resulted from the limitation on his opening statement. *See Lichtenwalter v. United States*, 89 U.S.App.D.C. 187, 190 F.2d 36 (1951). We therefore find his allegation meritless.

Appellants maintain several other contentions raising alleged errors occurring both pretrial and during trial. We have reviewed those assertions in light of the record and find them meritless.

Accordingly, we reverse appellants' convictions on first-degree burglary and remand to the Superior Court with instructions to enter judgments of conviction for second-degree burglary and to resentence appellants on those counts. We affirm the remainder of the convictions.

*Reversed in part, affirmed in part.*

---

11. The trial court also defined the bounds of cross-examination:

> Now then, we agree then that the format will be on cross-examination that you are not to question any witness regarding a trumping up, so-called or plain trumping up of charges, unless you first establish that that officer had contact with your client, direct contact with your client. Now, if the officer doesn't admit that, you are not to question any further along the lines of your theory, unless you first approach the bench and tell the court that you proffer that you are going to have direct evidence to show that there was a conversation.