Turner J. WRIGHT, Appellant,

v.

UNITED STATES, Appellee.

No. 84–1378.

District of Columbia Court of Appeals.
Argued Dec. 5, 1985.
Decided April 30, 1986.

Claudia Schlosberg, appointed by the court, for appellant.

Ilene G. Rosenthal, Asst. U.S. Atty., with whom Joseph E. diGenova, U.S. Atty., Michael W. Farrell, Judith Hetherton, and Joseph Michael Hannon, Jr., Asst. U.S. Attys., were on the brief, for appellee.

Before FERREN and BELSON, Associate Judges, and GALLAGHER, Senior Judge.

FERREN, Associate Judge:

A jury found appellant guilty of two counts of second-degree burglary, D.C. Code § 22–1801(b) (1981), one count of first-degree theft, *id.* §§ 22–3811, –3812(a) (1981 & 1985 Supp.), one count of second-degree theft, *id.* §§ 22–3811, –3812(b) (1981 & 1985 Supp.), and one count of destruction of property valued at $200 or more, *id.* § 22–403 (1981). The court sentenced him, altogether, to seven to twenty-one years in prison followed by three years of probation. Appellant primarily contends: (1) the evidence is insufficient to find guilt; (2) the trial court erred in denying his right to make an opening statement to the jury; and (3) the trial court erred in limiting his cross-examination of a government witness. We conclude the trial court committed error, but harmless error, when it curtailed defense counsel's opening statement.

Appellant's other contentions have no merit. Accordingly, we affirm.

## I.

At about 3:00 a.m. on August 27, 1983, while driving en route to a "missing person" call, Officers Michael J. Nicholl and Caroline Allston of the Metropolitan Police Department saw appellant and another man standing in front of Helen's Boutique at 1429 Good Hope Road, S.E. Appellant was holding what the officers believed was a white vase. Both Nicholl and Allston recognized appellant because they occasionally had seen him in the neighborhood during the early morning hours and Nicholl had known him for six or seven years. Officer Nicholl characterized his relationship with appellant as friendly, noting that appellant called him "Rookie" although Nicholl had been a police officer for more than thirteen years.

As the police car approached, appellant did not attempt to flee or to conceal anything, he did not make other furtive gestures, and he did not appear startled. The officers, nonetheless, were suspicious because they observed appellant with the object. The officers slowed their car to look at the store fronts in the vicinity for any sign of disturbance, such as broken windows. Seeing nothing unusual, they proceeded on their unrelated call. As they were "riding by," Officer Nicholl saw appellant drop the object he had been holding. Officer Allston did not see this, but she did hear the sound of glass breaking.

Approximately five minutes later, as the officers were taking the missing person report nearby, they heard a burglar alarm and recognized it as the alarm at Helen's Boutique. Officer Nicholl spontaneously remarked to Officer Allston, "[I]t had to be T.J.," referring to appellant. After confirming the alarm was not false, Officer Nicholl broadcast a lookout stating that he had observed appellant in front of Helen's Boutique holding a white vase.

After the officers had finished taking the missing person report, they drove to the boutique where they found one of the doors had been forced open. On the sidewalk outside the boutique, where appellant had been standing, they found a broken, yellow, ceramic bird bath. Minutes after arriving at the boutique, without having spoken with the victims of the burglary, Nicholl and Allston drove to appellant's home and, accompanied by other officers, arrested appellant at 3:25 a.m. No stolen property was recovered.

At trial, Helen Brooks, who operates Helen's Boutique and subleases the office upstairs to Richard Simon, testified for the government. According to Brooks, she lost approximately $400 in jewelry from the burglary and suffered damage to the outside door of Simon's office, as well as to the inside door leading from Simon's office to her boutique. She had no knowledge of anything missing from Simon's office upstairs.

Simon testified that he had discovered his losses and damages at about 6:00 on the morning of the burglary. He had found the outside door to his office, its lock, and the bathroom window broken. He also had found that a bird bath, a ceramic elephant, a desk clock, and two utility knives were missing. Simon identified, as his property, the two-foot tall, ceramic, yellow bird bath the police had found broken on the sidewalk outside his office.

Both Officers Nicholl and Allston also identified the bird bath as the object they had seen appellant holding. Nicholl testified that he had been mistaken when he thought the object was a white vase. He added that the bird bath had the same size and shape as the object he had seen appellant holding. Both officers testified that the object's pale color in the artificial light of the street lamps accounted for their mistaken belief that it was white.

The only defense witness, appellant's brother, had been sitting on the porch when the police arrived to arrest appellant. He testified that he had come home at 2:00 on the morning of the burglary and that

appellant had arrived about twenty minutes later (about three quarters of an hour before the burglary).

## II.

██ Appellant contends the trial court erroneously denied his motions for judgment of acquittal, because the evidence established merely his presence at the scene, not his participation in the burglary.

The government tried appellant on the theory that he had aided and abetted the crimes by acting as a lookout for other, unidentified individuals. "To establish that [appellant] had aided and abetted the offenses alleged, the government was required to offer proof that: (a) a crime was committed by someone; (b) the accused assisted or participated in its commission[;] and (c) his participation was with guilty knowledge." *Jefferson v. United States,* 463 A.2d 681, 683 (D.C.1983) (per curiam) (citing *Byrd v. United States,* 364 A.2d 1215, 1219 (D.C.1976). We review the evidence in the light most favorable to the government, recognizing the right of the jury to weigh the evidence, determine the credibility of witnesses, and draw inferences from their testimony. *Crawford v. United States,* 126 U.S.App.D.C. 156, 158, 375 F.2d 332 (1967); *Curley v. United States,* 81 U.S.App.D.C. 389, 392–93, 160 F.2d 229, 232–33, *cert. denied,* 331 U.S. 837, 67 S.Ct. 1750, 91 L.Ed. 1873 (1947).

Without dispute, the evidence established that burglary, theft, and destruction of property were "committed by someone." Moreover, a reasonable juror could find beyond a reasonable doubt that appellant "assisted or participated" in these offenses, since the police officers had seen appellant standing directly in front of the burglarized premises near the time of the burglary, holding what was later identified as the stolen bird bath. Finally, the jury could infer appellant's "guilty knowledge," beyond a reasonable doubt, because he not

only was observed holding stolen property at the scene near the time of the burglary, but also was seen dropping the property as the police car passed, thereby exhibiting a nervous, guilty reaction. Accordingly, the evidence was sufficient to find guilt on all counts.

## III.

### A.

██ Appellant also contends the trial court erroneously denied him the right to make an opening statement to the jury. At the beginning of trial, the prosecutor made an opening statement in which he previewed the government's evidence. The prosecutor acknowledged the evidence would show that the officers initially had misidentified the yellow bird bath as a white vase and that the government's fingerprint expert had not found appellant's fingerprints on it.

Immediately thereafter, defense counsel began her opening statement. After introductory remarks concerning the role of a jury, defense counsel informed the jury that no witness would testify that he or she had seen appellant enter or leave the burglarized premises and that the government would have to acknowledge that none of the stolen property had been recovered from appellant. When counsel then began to highlight the discrepancy between the initial observation of a white vase and the later discovery of a yellow bird bath, the prosecutor objected.

During a bench conference, defense counsel argued that, although the defense would produce no witnesses, she was entitled to highlight for the jury the changing identification of the ceramic object and the absence of appellant's fingerprints on it. The trial court responded, "[I]f you're not going to put up any witnesses, then you can't make an opening statement."[1]

---

**1.** The trial court did suggest that, if the defense chose to adduce some evidence, the court would afford the opportunity to make a supplemental opening statement. Although appellant eventually did produce one witness, counsel did not

The trial court erred. In a criminal case tried before a jury, the defense has the right to make an opening statement. *Jennings v. United States*, 431 A.2d 552, 560 (D.C.1981), *cert. denied*, 457 U.S. 1135, 102 S.Ct. 2964, 73 L.Ed.2d 1353 (1982); *Hampton v. United States*, 269 A.2d 441, 443 (1970). The defense decision not to call witnesses of its own does not diminish this right. *United States v. Hershenow*, 680 F.2d 847 (1st Cir.1982).

> [P]rovided [the defense] confines [it]self to a discussion of what [it] hopes to show, a defendant in a criminal case has a right to make an opening [statement] regardless of whether he [or she] intends to call witnesses, and may do so immediately after the prosecutor's opening, absent good cause shown to the contrary.

*Id.* at 858.

### B.

The government seeks to justify the court's ruling on a different ground, perhaps because it recognizes that the trial court erred in stating, categorically, that a defendant who intends to call no witnesses may not make an opening statement. The government stresses that "the scope and extent of defendant's opening statement rests largely within the discretion of the trial judge," *Jennings*, 431 A.2d at 560; that appellant's proffered opening statement amounted to no more than a desire to argue with the government's opening statement; that the trial court "is always free to stop argument if it occurs," *Hershenow*, 680 F.2d at 858; and thus that the trial court's ruling, on the record here, was correct. The government's contentions, however, proceed from two erroneous premises: (1) the trial court purported to exercise "discretion," and (2) this court can substitute its judgment, based on a correct interpretation of the law, to sustain a trial court's discretionary ruling based on a clear error of law.

Unquestionably, the trial court has "discretion" to regulate the scope and extent of an opening statement. *Jennings*, 431 A.2d at 560.[2] However, the court in this case—because it misunderstood the law—believed it had no discretion to permit the defense an opening statement, since the defense intended to call no witnesses. Thus, the court failed to "exercise choice in a situation calling for choice." *Johnson v. United States*, 398 A.2d 354, 363 (D.C.1979).

We cannot sustain a ruling that should have been discretionary, but was not, even though discretion, properly exercised, might have led to the same result. "[T]he essence of [discretionary] decision-making is the trial court's judgment in exercising that discretion," *id.*, for a discretionary decision is based not only on hard facts but also—and often more importantly—on perceptions of demeanor, of the pace of the trial, and, ultimately, of the probable impact of counsel and witnesses on the jury. The parties, therefore, are entitled to have the trial judge exercise that discretion, unfettered by erroneous legal thinking, *see id.*, 398 A.2d at 363–64; they need not settle for the substituted judgment of an appellate court that would sustain the ruling on a plausible, alternative ground without benefit of all the data, derived from perceptions at trial, that in-

---

request the opportunity to supplement her opening statement.

2. As we stated in *Johnson v. United States*, 398 A.2d 354, 361 (D.C.1979), a decision committed to the trial court's exercise of "discretion" has a particular meaning:

> **Discretion signifies choice.** First, the decision-maker exercising discretion has the ability to choose from a range of permissible conclusions. The decision-making activity is not ministerial and the various elements of the problem do not preordain a single permissible conclusion.... Second, the decision-maker can rely largely upon his [or her] own judgment in choosing among the alternatives. Although the act of choosing will be guided by various legal and other considerations, the decision-maker, and not the law, decides.... In this sense, the core of "discretion" as a jurisprudential concept is the absence of a hard and fast rule that fixes the results produced under varying sets of facts. [Citations omitted.]

herently go into a discretionary ruling. *See Ibn-Tamas v. United States*, 407 A.2d 626, 636 n. 17 (D.C.1979). Were an appellate court to substitute its own judgment, the court would rationalize a result which the trial court itself, properly informed of the law, might not have reached, given factors at trial which the appellate court could not possibly perceive.

This analysis is consistent with our often-expressed view, derived from *Securities and Exchange Commission v. Chenery Corp.*, 318 U.S. 80, 88, 63 S.Ct. 454, 87 L.Ed. 626 (1943), that we can "affirm a trial court ruling when the court gave a wrong reason—or gave no reason at all—if the ruling is 'correct'" on another legal ground. *Ibn-Tamas*, 407 A.2d at 636. This statement concerns non-discretionary rulings, *i.e.*, legal rulings which, to be error-free, have only one permissible outcome. *Id.* In such a case, the appellate court applies the law to established facts and holds that the trial court ruling, though erroneously premised, is nonetheless correct as a matter of law because the "court, properly instructed, *inevitably* would reach the same result." *Id.* (emphasis added). In contrast, by definition a discretionary ruling—with its area of choice and its essential trial court perspective—does not "inevitably" lead to only one acceptable result. *See Johnson*, 398 A.2d at 363–64.

In short, in this case the trial court erroneously failed to exercise discretion over defense counsel's proffered opening statement when it had a responsibility to do so. And, as a general proposition, this court cannot properly substitute its judgment to sustain a ruling committed to trial court discretion when that discretion—to which the parties had a right—was not exercised.[3]

3. Alternatively, because the trial court ruled on a matter (the scope of an opening statement) "committed to the trial court's discretion," *Johnson*, 398 A.2d at 363, perhaps we could have conceptualized the ruling as discretionary, in the categorical sense, and noted that the judge "relied upon an improper factor," *id.*, 398 A.2d at 365—an error of law—in curtailing defense

## C.

With this said, we acknowledge that conceivably, in some typical situations calling for discretionary rulings, "[t]he facts may foreclose one or more of the options otherwise available to the trial court" and thus leave the court "with but one option it may choose without abusing its discretion, all the others having been ruled out." *Johnson*, 398 A.2d at 364. Theoretically, in such a case—which is rare—this court could sustain the ruling, as a matter of law, even though the trial court exercised its discretion using an erroneous factual or legal premise. In doing so, however, we would not be substituting our judgment for essential trial court perceptions. Instead, we would be saying the trial court had no discretion in the particular circumstances, even though the court usually would have discretion in the typical situation.

Accordingly, although this court cannot sustain the trial court's curtailment of defense counsel's opening statement on an alternative ground that would have been available to the trial court if it actually had exercised discretion, we must consider the theoretical possibility that the trial court, as a matter of law, could not have ruled otherwise, even though it proceeded from an erroneous legal premise. More specifically, in light of the government's substantive contention that defense counsel's proffered opening statement was excessively argumentative, we must evaluate whether, under the circumstances, the trial court actually had "but one option." *Johnson*, 398 A.2d at 364.

We note, initially, what an opening statement legitimately is intended to accomplish. "The purpose of an opening statement for the defense is to explain the defense theory

counsel's opening statement. The result would be the same. We cannot substitute our judgment to sustain a discretionary ruling based on a clear error of law, since we were not privy to the trial atmosphere that necessarily informs, and thus properly influences, a discretionary judgment even when the correct law is applied.

of the case, to provide the jury an alternative interpretive matrix by which to evaluate the evidence, and to focus the jury's attention on the weaknesses of the government's case." *Oesby v. United States,* 398 A.2d 1, 5 (D.C.1979). Put another way, "[t]he function of a defendant's opening statement is to enable him [or her] to inform the court and jury [of] what he [or she] expects to prove and to frame the questions and issues with which the jury will be confronted." *Jennings,* 431 A.2d at 560.

Inevitably, a defendant's opening statement will differ, at least in part, from the version of the evidence offered by the prosecution in its opening statement. Thus, particularly when the defense intends to rely solely upon evidence that will be adduced or highlighted through cross-examination, its opening statement inherently will sound contradictory. Nonetheless, as long as the opening statement is confined to what the defense "hopes to show" at trial, through cross-examination or otherwise, *Hershenow,* 680 F.2d at 858, the trial court should permit counsel to continue—provided, of course, that the court may curtail an opening statement that becomes argumentative or inflammatory. *Id.; see Lichtenwalter v. United States,* 89 U.S. App.D.C. 187, 190 F.2d 36 (1951).

Through her opening statement, appellant's counsel sought to offer "an alternative interpretive matrix by which to evaluate the evidence." *Oesby,* 398 A.2d at 5. She proposed to inform the jury of the testimonial evidence she intended to elicit through cross-examination of witnesses the government had announced it would produce, and to focus the jury's attention on the weaknesses of the government's case by emphasizing the changing identification of the ceramic object and the lack of appellant's fingerprints on it. In short, counsel proffered a statement tailored to inform the jury solely of what the defense "hope[d] to show," *Hershenow,* 680 F.2d at 858: there was no credible evidence that appellant had ever touched a yellow bird bath. This proffered statement was not the kind of argumentative presentation a trial judge has no choice but to bar.[4]

## D.

■ Although we conclude that the trial court erred and that its ruling cannot be sustained, as a matter of law, on the ground that the court, in any event, had but one option, we also conclude that the error was harmless.[5] The record demonstrates that counsel's thorough cross-examination of government witnesses, as well as her closing argument, adequately apprised the jury of the weaknesses and discrepancies in the government's evidence that counsel had sought to highlight in her opening statement. *See Hershenow,* 680 F.2d at 859. Moreover, appellant's counsel did give an abbreviated opening statement and received the opportunity to make a supplemental opening statement before presenting the defense, but declined to do so. *See Jennings,* 431 A.2d at 560. Finally, neither the defense theory nor the testimony was complicated or difficult to understand. *See Hershenow,* 680 F.2d at 859. On this record, therefore, we are unable to discern prejudice sufficient to warrant reversal. *Jennings,* 431 A.2d 560.

## IV.

■ Finally, appellant contends the trial court violated his Sixth Amendment right to confront witnesses by curtailing his

---

4. If the trial court had purported to exercise discretion, knowing that the defense was entitled to an opening statement irrespective of its intention to call witnesses, the question for review would be different: whether the court, in curtailing the opening statement, was making a choice within the range of permissible alternatives. *See supra* note 2.

5. If we had characterized the trial court's ruling, alternatively, as an erroneous exercise of discretion, *see supra* note 3, we would conclude that the error was not "of a magnitude to require reversal," *Johnson,* 398 A.2d at 366, and that the trial court, accordingly, did not abuse its discretion. *Id.,* 398 A.2d at 367.

cross-examination of Officer Nicholl about a prior inconsistent statement that could be used both to establish Nicholl's bias and to undermine his credibility.

Toward the end of a rather extensive cross-examination of Officer Nicholl, appellant's counsel asked, "[I]n fact, you never talked to anyone that evening, or at any other time, concerning whose bird bath it was. Is that correct?" After the prosecutor's objection as to relevancy was overruled, Officer Nicholl replied, "I didn't talk to any civilians."

Defense counsel then laid the foundation to impeach the officer with a prior statement that he had, in fact, known who owned the bird bath before he arrested appellant. The prosecutor objected. At a bench conference, defense counsel proffered testimony that Officer Nicholl had given at a preliminary hearing. Counsel characterized it as testimony that Officer Nicholl had spoken to Helen Brooks, the owner of the boutique, that Brooks had told him the bird bath was hers, and that she had said she previously had placed it in the burglarized premises herself.[6] The trial court ruled that questions about the prior statement were inadmissible because they were collateral and irrelevant.

Cross-examination is central to the fundamental right of confrontation guaranteed by the Sixth Amendment. U.S. CONST., AMEND. VI; *Alford v. United States*, 282 U.S. 687, 51 S.Ct. 218, 75 L.Ed. 624 (1931); *Springer v. United States*, 388 A.2d 846, 854 (D.C.1978). But regulation of the scope and extent of cross-examination is committed to the sound discretion of the trial court. *Id.* (quoting *Alford*, 282 U.S. at 694, 51 S.Ct. at 220). *Best v. United States*, 328 A.2d 378, 381 (D.C.1974).

Appellant claims an abuse of trial court discretion. He asserts, first, that the questions about Officer Nicholl's prior statement were relevant because they were probative of bias—"always a proper subject of cross examination." *Hyman v. United States*, 342 A.2d 43, 44 (D.C.1975) (quoted in *Springer*, 388 A.2d at 855). Appellant argues, more specifically, that if, at the time of appellant's arrest, Officer Nicholl did not know who owned the bird bath or where it had been located, then he would not know it had been taken during the burglary. Thus, without this knowledge, he may have arrested appellant because of a bias attributable to his previous relationship with him. Appellant's argument here, however, is hollow, for defense counsel already had accomplished this intended purpose when counsel elicited from Nicholl an admission that he had not "talk[ed] to any civilians" about ownership of the bird bath before he arrested appellant. If counsel had succeeded in eliciting the prior statement, indicating that Nicholl knew the birdbath had come from the burglary at the time he arrested appellant, the implication of bias would have evaporated.

■ Appellant's only credible contention, therefore, is that questions concerning Nicholl's allegedly inconsistent statement were admissible to impeach the officer's credibility.[7] "Cross-examination concerning mat-

---

**6.** There is some dispute about the content of this testimony; the record does not contain a copy of the pertinent portions of the transcript of the preliminary hearing. The portions of the prior statement read during the bench conference indicate that Officer Nicholl was asked, "[W]ere you able to determine how Helen [Brooks] knew the bird bath was in the office earlier that morning?" He answered, "She placed it there herself. It was hers."

**7.** Because the record is incomplete, *see supra* note 6, we are unable to determine whether Officer Nicholl's statements were necessarily inconsistent. *See McClain v. United States*, 460

A.2d 562, 568 (D.C.1983). It is not clear from the record how Officer Nicholl purportedly became familiar with Ms. Brooks' statements. The portions of the preliminary hearing transcript read into the trial record do not indicate Officer Nicholl spoke directly with Ms. Brooks; her comments could have been relayed through a police officer or police reports. "An exhaustive proffer [, however,] is not normally a strict requirement for initiation of a line of cross-examination. 'Counsel often cannot know in advance what pertinent facts may be elicited on cross-examination.'" *Best v. United States*, 328 A.2d 378, 382 & n. 3 (D.C.1974) (citation omitted). We therefore assume for purposes of ar-

ters pertaining to credibility must be given broad scope, especially when allegedly inconsistent prior statements are involved." *Moss v. United States,* 368 A.2d 1131, 1134 (D.C.1977) (citations omitted).[8] However, "the trial judge may always limit cross-examination ... to prevent inquiry into matters having little relevance or probative value." *Springer,* 388 A.2d at 854–55 (citation omitted). "The trial judge is the person who can best weigh the relevanc[e] of disputed evidence against its tendency to confuse the jury on collateral issues.... [W]e will disturb his [or her] ruling only upon a showing of an abuse of discretion." *Mitchell v. United States,* 408 A.2d 1213, 1215 (D.C.1979) (citation omitted).

Prejudicial error may result from limiting a defendant's right to cross-examine a crucial government witness, especially a witness without whose testimony the government could not prove guilt. *Moss,* 368 A.2d at 1134–35 (citing *Holmes v. United States,* 277 A.2d 93 (1971)). Admittedly, Officer Nicholl was an important government witness. His observations helped establish appellant's participation in the crime with guilty knowledge. Nicholl's testimony, however, was useful primarily because it substantially corroborated Officer Allston's. They both had observed appellant in front of the burglarized premises holding what they later identified as a yellow bird bath. It is unlikely that the jury would have discredited Nicholl's observation on the basis of inconsistent statements about whether he had known who owned the bird bath before he arrested appellant. But even if the jury, to some extent, would have discredited Nicholl, Officer Allston's

unimpeached testimony was sufficient for a reasonable juror to infer that appellant had aided and abetted the charged offenses. Appellant's convictions, therefore, were not critically linked to the testimony of a single government witness as in *Moss* and *Holmes.* Any prejudice from the trial court's exclusion of this particular impeachment, on the facts here, was minimal.

Furthermore, the probative value to the defense of impeaching Officer Nicholl with this particular prior inconsistent statement would have been minimal, since Nicholl, who was cross-examined at length, had already been confronted with a different, allegedly inconsistent statement he had made at appellant's preliminary hearing. The second allegedly inconsistent statement would have been, to some extent, cumulative.

Finally, the proffered prior inconsistent statement would have had a tendency to confuse the jury, for it contradicted a fact not in dispute: that Simon, not Brooks, owned the bird bath. The statement also would have tended to confuse the jury because, although hearsay, it would have affected the credibility of Brooks, the boutique owner, whose truthfulness could not be tested by impeaching Officer Nicholl. *See McClain v. United States,* 460 A.2d 562, 569 (D.C.1983).

In sum, the minimal probative value of the intended impeachment, its tendency to confuse, and the minimal prejudice from its curtailment support the trial court's ruling. There was no abuse of discretion.[9]

*Affirmed.*

gument that Officer Nicholl's prior statements may have been inconsistent with his trial testimony.

**8.** Extrinsic evidence to impeach a witness' credibility is admissible only if it concerns a matter which is relevant or if it could otherwise be admitted for any purpose independent of the self-contradiction. *McClain v. United States,* 460 A.2d 562, 569 (D.C.1983); *Moss v. United States,* 368 A.2d 1131, 1135 (D.C.1977). Defense counsel, however, did not attempt to introduce the prior statement. She sought only to refer to

it in her questions, in order to refresh the witness' memory. The prior statement, therefore, was not introduced as extrinsic evidence.

**9.** Appellant also contends the trial court further violated his right to cross-examine Officer Nicholl when it prohibited inquiry into the officer's relationship with appellant. The specific examination in question is:

[DEFENSE COUNSEL]: Sir, you described your relationship to Mr. Wright as being friendly.

[OFFICER NICHOLL]: Yes, ma'am.

[DEFENSE COUNSEL]: Would you consider putting somebody under arrest a friendly act?
[PROSECUTOR]: Objection. His testimony was—
THE COURT: Sustained. That's argumentative.
[DEFENSE COUNSEL]: No further questions.

The trial court was correct; the question was rhetorical and argumentative. We perceive no abuse of discretion. *See Springer v. United States*, 388 A.2d 846, 854 (D.C.1978) (The trial judge may always limit cross-examination to preclude repetitive and unduly harassing interrogation.)

Appellant further contends the trial court erred when it prohibited counsel from asking

appellant's brother, "Would you characterize your brother's relationship to the police as a friendly relationship?" The trial court correctly ruled the question irrelevant. Counsel's question did not address Officer Nicholl's relationship with appellant. Rather, the question addressed the irrelevant issue of appellant's relationship with the entire police force. We perceive no error.

Finally, appellant contends the trial judge, by ruling adversely to appellant on numerous occasions, exhibited bias against him, depriving him of a fair trial. This contention is frivolous. *See Khaalis v. United States*, 408 A.2d 313, 347-58 (D.C.1979), *cert. denied*, 444 U.S. 1092, 100 S.Ct. 1059, 62 L.Ed.2d 781 (1980).