**Michael T. GARRETT, Appellant,**

v.

**UNITED STATES, Appellee.**

**No. 92–CF–1312.**

District of Columbia Court of Appeals.

Argued Dec. 14, 1993.

Decided June 9, 1994.

G Arthur Robbins, Crofton, MD, for appellant.

Elizabeth Trosman, Asst. U.S. Atty., with whom J. Ramsey Johnson, U.S. Atty. at the time the brief was filed, and John R. Fisher, Asst. U.S. Atty., Washington, DC, were on the brief, for appellee.

Before WAGNER,* KING and SULLIVAN, Associate Judges.

SULLIVAN, Associate Judge:

Appellant, Michael T. Garrett, appeals his conviction of first-degree burglary, D.C.Code § 22–1801(a) (1989), second-degree theft, *id.* §§ 22–3811, –3812(b), and misdemeanor destruction of property, *id.* § 22–403. He contends that (1) he was denied due process of law because the trial judge failed *sua sponte* to recuse himself from presiding as the trier of fact in light of trial counsel's pretrial statements to the Court that she would have problems representing appellant if he testified, and (2) the evidence adduced at trial was insufficient to sustain a verdict of guilt beyond a reasonable doubt. We affirm.

On the evening of December 30, 1991, the Postell family was at their home in Northwest Washington, watching television. They heard the doorbell ring, but did not answer it because they did not recognize the man at the door. Within minutes of the doorbell ringing, they heard strange noises coming from their basement, and Mr. Postell called 911 and told the police that there was someone inside their basement. Mr. Postell discovered that the nails securing the basement window of his house had been pulled out of the wall, the plaster around the door was destroyed, the lock on the basement door was broken, and a small television was missing from the house.

The police responded to Mr. Postell's call and saw appellant, Garrett, on the back steps of the house next door to the Postell's. Appellant ran from the police. A police dog picked up a scent at the back steps of the neighboring house and tracked it to the Postell's neighbor's garage. The dog signaled toward the pick-up truck in the garage. Appellant was discovered lying inside the truck, covered with rags. The television set that had been taken from the Postell's house was about five feet away from the appellant. As appellant exited the garage with the police, he told Officer Rummel that he did not go into the house himself, but that he was with a friend who did.

After a bench trial, the trial judge found appellant guilty of first-degree burglary, sec-

* Former *Chief Judge* ROGERS was a member of the division that heard oral argument in this case. After her departure from the court, *Associate Judge* WAGNER was selected by lot to replace her.

ond-degree theft, and misdemeanor destruction of property.

## I.

 Prior to the commencement of trial, appellant's trial counsel requested to speak with the trial judge *ex parte*.[1] She made the following statement to the judge:

> As your Honor recalls, I'm Mr. Garrett's fourth attorney in this case. As far as I knew, we had prepared for trial when he had decided to go before you in a nonjury capacity. And as much as he had decided to take the stand, I told him if he had decided to take the stand there would be problems with me continuing his representation.
>
> This morning, he informed me that he didn't know that today was the trial date although I had given it to him in writing. He's been making intimations that maybe I haven't done my job towards him, and I feel very reluctant to go forward today thinking that maybe I'm just setting myself up for an ineffective claim.

At the conclusion of counsel's statements, the trial judge spoke at length with appellant to determine whether appellant understood the difference between a jury and bench trial, whether his waiver of his right to a jury trial was both knowing and voluntary, and whether appellant was satisfied with his attorney. The following colloquy took place:

> [Appellant]: Part of the reason I elected to have Your Honor decide on the case [was] because she felt it was in my best interest not to take the stand. And regardless of what anybody says in front of a jury, for you not to get your side of what's happening, it's [sic] just looks bad.

So it's not so much that I benefit to take the stand today, unless you feel it's necessary, it's just that I didn't want to have that appearance in front of the jury if I didn't take the stand in my defense. That's how I felt I should approach that.

[The Court]: Okay. Now do you understand that if you decided to go to trial in front of a jury and decided not to testify, the jury will be told not to hold that against you. If you want me to tell the jury that, I would certainly give that instruction.

[Appellant]: I understand that theoretically, Your Honor, but I also know, I mean I just don't have a lot of faith in the juries today. So much is going on and I have a fairly extensive record. And even though this situation, I can't really state now without compromising, but I just feel that I would maybe feel better to let you decide the case because I mean there's no information that you don't already have. It can't be any worse for me.

 \* \* \* \* \* \*

[The Court]: Well, let me just say that [your record] would not affect, I mean at this point even the fact that you said that wouldn't affect my determination of your guilt or innocence in this case. . . .

At the conclusion of this discussion, the trial judge found that appellant was sufficiently satisfied with counsel, understood his right to a jury trial, and knowingly waived that right. Thereupon, the bench trial proceeded.

## II.

This court has consistently held that "[t]he essence of the judicial role is neutrality."

---

**1.** "Under what has become known as the *Monroe/Farrell* rule, when an accused raises pretrial claims of ineffective assistance of counsel the court must conduct an on-the-record hearing to determine whether counsel is providing representation within the range of competence demanded in criminal cases. In addition, the court must make on-the-record findings sufficient to permit meaningful appellate review on the issue of the ability and preparedness of counsel to render effective assistance under the prevailing circumstances." *Fields v. United States*, 466 A.2d 822, 824 (D.C.) (citations omitted), *cert. denied*, 464 U.S. 998, 104 S.Ct. 497, 78 L.Ed.2d 690 (1983). The precise form, substance and scope of the inquiry is committed to the sound discretion of the trial court. *See Farrell v. United States*, 391 A.2d 755, 760 (D.C.1978). Thus, in the present case, we find no abuse of discretion by the trial judge in conducting the *Monroe/Farrell* hearing *ex parte*, that is, at the bench, outside the earshot of the government.

*Byrd v. United States,* 377 A.2d 400, 404 (D.C.1977). Judges must remain disinterested and objective participants throughout a criminal proceeding in order to ensure public confidence in the integrity of the judicial system. Canon 3(C)(1) of the MODEL CODE OF JUDICIAL CONDUCT (1972) provides that "A judge should disqualify himself in a proceeding in which his impartiality might reasonably be questioned...."[2] In cases challenging a trial judge's impartiality, we have held that "a judge must recuse from any case in which there is 'an *appearance* of bias or prejudice sufficient to permit the average citizen reasonably to question [the] judge's impartiality.'" *Scott, supra,* note 2, 559 A.2d at 749 (quoting *United States v. Heldt,* 215 U.S.App.D.C. 206, 239, 668 F.2d 1238, 1271 (1981) (footnote and citations omitted), *cert. denied,* 456 U.S. 926, 102 S.Ct. 1971, 72 L.Ed.2d 440 (1982)); *see also In re J.A.,* 601 A.2d 69, 75 (D.C.1991) (per curiam).

Appellant contends that his trial counsel's statement to the trial judge, *see supra* Part I, constituted a declaration by counsel of appellant's intention to commit perjury. Therefore, he argues that, consistent with our holding in *Butler v. United States,* 414 A.2d 844 (D.C.1980) (en banc), the trial judge was required, *sua sponte,* to recuse himself and certify the case for trial to another judge. Further, appellant alleges that his counsel's insinuation that he would commit perjury, "impacted the judge's evaluation of the circumstantial evidence against" him and "influenced his decision with respect to [his] guilt." Thus, appellant concludes that his conviction must be reversed because the "due process clause commands fundamental fairness in factfinding." *Id.* at 852.

■ In *Butler,* we observed that once a judge's "neutral position has been jeopardized, the judicial evenhandedness that should pervade the courtroom disappears and 'the right to a fair trial may be imperiled.'" *Id.* (quoting *Haughton v. Byers,* 398

A.2d 18, 20–21 (D.C.1979) (citations omitted)). However, unlike the present case, defense counsel in *Butler* had informed the trial judge, sitting as trier of fact, of the merits of his client's case and the fact that his client intended to commit perjury. Defense counsel told the court:

> This is an open and shut case.... It is not a case where you put character in evidence, because the defendant is on parole for a crime of moral turpitude, and he doesn't have an alibi because he was arrested on the scene and, to be frank, Your Honor, because I expect he wants to testify in this case he is concerned that I do not want to put him on the stand, because he's told me before that he had the pistol, and today for the first time he tells me that's not true.
>
> I have explained to the defendant, Your Honor, that I cannot put him on the stand if I think he's committing perjury, without telling the Court.

*Butler, supra,* 414 A.2d at 845.

Moreover, in *Butler,* contrary to the present case, the trial judge took an active role in convincing the defendant to plead guilty. As a result of the statements made by the defense attorney, the trial judge in *Butler* reacted by prejudging defendant's guilt. This court concluded that "the destruction of the appearance of impartiality [was] so prevalent on this record," that "substantial prejudice is apparent." *Id.* at 853.

Thus, the present case is factually distinguishable from *Butler* in several significant respects. First, counsel's statements to the trial judge here, even if construed in the best possible light in favor of appellant's contention, did not remotely constitute an unequivocal declaration that appellant would perjure himself if he testified. *See Lowery v. Cardwell,* 575 F.2d 727, 730 (9th Cir.1978) (in determining whether a defendant has been denied a fair trial, the defense counsel's ac-

**2.** By resolution of the Joint Committee on Judicial Administration, the American Bar Association's 1972 version of the Code of Judicial Conduct, with certain modifications and qualifica-

tions, currently applies to judges of the District of Columbia Courts. *Scott v. United States,* 559 A.2d 745, 748 n. 6 (D.C.1989) (en banc).

tion must "amount[ ] to such an *unequivocal announcement* to the fact finder [of counsel's belief of perjury] as to deprive appellant of due process") (emphasis added).[3] Second, appellant explained to the trial judge that his desire to take the witness stand stemmed from his belief that if he did not, he would "look bad" in front of the jury and he did not "have a lot of faith in juries today."

Appellant explained to the judge his reasons for wanting to testify, and he eventually chose not to testify at his non-jury trial. Thus, the record indicates that appellant wanted to testify because of his fear that a jury would hold it against him if he did not and not because he sought to exculpate himself through perjurious testimony.

Nor is there anything to suggest that the trial judge had prejudged appellant's guilt. To the contrary, the trial judge's comments indicate that he remained impartial throughout appellant's trial. Nothing in the tone of the judge's inquiries and remarks to the appellant or his counsel indicates that he relied on any inadmissible evidence or improper argument. *Cf. Moore v. United States,* 609 A.2d 1133, 1136 (D.C.1992) ("well-recognized presumption that a trial judge, in deciding a case without a jury, will disregard any inadmissible evidence and any improper argument") (internal quotations omitted) (quoting *Singletary v. United States,* 519 A.2d 701, 702 (D.C.1987)). Appellant's contention that the trial judge was not impartial in rendering his decision on guilt is unsupported by the record. Accordingly, we find no error by the trial judge in not *sua sponte* recusing himself.

## III.

Appellant also contends that the trial judge erred in denying his motion for judg-

ment of acquittal because the evidence was insufficient to establish all the elements of aiding and abetting burglary, theft, and destruction of property. He claims that while the evidence convincingly established that the crimes were committed, it was inadequate to prove beyond a reasonable doubt that he assisted or participated in them.

██ "To establish that [appellant] had aided and abetted the offenses alleged, the government was required to offer proof that: (a) a crime was committed by someone; (b) the accused assisted or participated in its commission[;] and (c) his participation was with guilty knowledge." *Wright v. United States,* 508 A.2d 915, 918 (D.C.1986) (quoting *Jefferson v. United States,* 463 A.2d 681, 683 (D.C. 1983) (per curiam) (citation omitted)).

██ Viewing the evidence, as we must, in the light most favorable to the government,[4] the government's evidence showed more than that appellant was present near the scene of the burglary and ran when he saw the police. The government also presented evidence that a police dog picked up a scent at the back steps of the Postell's neighbor's house and tracked it to a pick-up truck in the neighbor's garage. Officer Rummel testified that he found appellant hiding under rags in the pick-up truck and that the stolen television set was found only five feet away from where the appellant was hiding in the truck. Upon his discovery by Officer Rummel, appellant told the officer that he did not go into the house, but his friend did.

██ In reviewing the sufficiency of the evidence, this Court must review all of the evidence, and it may not make distinctions between direct and circumstantial evidence. *See McAdoo v. United States,* 515 A.2d 412,

---

3. In *Lowery, supra,* the Ninth Circuit held that if defense counsel tells a judge, sitting as trier of fact, that his client has or will commit perjury, the judge is disabled from judging the merits of the defendant's defense. The facts of this case are distinguishable from *Lowery,* however. In *Lowery,* the defense counsel abruptly ceased questioning his client when she denied, while testifying under oath at trial, that she shot the decedent. He then requested a recess, made a

motion to withdraw as defendant's counsel and said he could not state the reason for his motion. The court held that "the only conclusion that could rationally be drawn by the judge was that in the belief of her counsel appellant had falsely denied shooting the deceased." *Id.* at 730.

4. *Green v. United States,* 608 A.2d 156, 158 (D.C. 1992) (citations omitted).

427 (D.C.1986). That the government's case is largely circumstantial is of no import. *See Wheeler v. United States,* 470 A.2d 761, 764 (D.C.1983) (evidence that victim saw defendant in neighbor's yard and shortly thereafter heard the sound of broken glass, and that police officers discovered defendant in victim's house was sufficient to sustain conviction for first-degree burglary with intent to steal); *Dyson v. United States,* 450 A.2d 432, 436–37 (D.C.1982) (court did not err in denying motion for judgment of acquittal when appellant was seen in the area of burglarized premises, then, shortly after the burglary, was found crouched in a stairwell of an adjoining house). "Proof of presence at the scene of a crime plus conduct which designedly encourages or facilitates a crime will support an inference of guilty participation as an aider and abettor." *Griggs v. United States,* 611 A.2d 526, 528 (D.C.1992) (internal quotations omitted) (quoting *Jefferson, supra,* 463 A.2d at 683).

Given the testimony regarding appellant's flight, his proximity to the scene of the crime, his attempt to hide from the police, his proximity to the stolen television set, and his statement to the police, there is ample evidence upon which a reasonable mind might conclude guilt beyond a reasonable doubt. *See United States v. Salamanca,* 300 U.S.App.D.C. 384, 990 F.2d 629, *cert. denied,* —— U.S. ——, 114 S.Ct. 337, 126 L.Ed.2d 281 (1993) (a conviction of aiding and abetting will be affirmed if any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt).

Accordingly, the judgments of conviction are

*Affirmed.*