Tawanna **BOLDEN** & James Andrews, Appellants,

v.

**UNITED STATES, Appellee.**

No. 97–CM–1589, 97–CM–1708.

District of Columbia Court of Appeals.

Argued May 10, 2001.
Decided Nov. 13, 2003.

Valentine Anyaibe, for appellant James Andrews.

Bradford P. Johnson, Washington, DC, for appellant Tawanna Bolden.

Steven B. Snyder, Assistant United States Attorney, with whom Wilma A. Lewis, United States Attorney at the time the brief was filed, and John R. Fisher, Elizabeth Trosman, and Amy Jeffress, Assistant United States Attorneys, were on the brief for appellee.

Before FARRELL and RUIZ, Associate Judges, and PRYOR, Senior Judge.[*]

PER CURIAM:

After a bench trial, James Andrews and Tawanna Bolden were convicted of posses-

---

[*] Senior Judge Mack was a member of the division that heard oral argument in this case. Senior Judge Pryor was selected by lot to replace Judge Mack upon her retirement from the court.

sion of marijuana, in violation of D.C.Code § 48–904.01(d) (2001). They both argue on appeal that the government failed to present sufficient evidence to support a finding of guilt beyond a reasonable doubt, based on either a constructive possession or an aiding and abetting theory. We agree that the evidence was insufficient as to Andrews, but we sustain Bolden's conviction.

## I.

On February 7, 1997, at 3:55 p.m., United States Park Police officers executed a search warrant at the house where appellants lived on 1124 Third Street, S.W. When the police entered, one officer saw "a cloud of smoke throughout the apartment" that had the odor of burning marijuana; another saw the same "thick gray cloud [of marijuana smoke] throughout the downstairs area." As many as fourteen persons including eight adults were in the house, approximately five of them males, some of whom were "running about" in the first floor area. Altogether the police seized nearly 1000 grams of marijuana, packaged and loose, that had been deposited in different parts of the house. Specifically, they seized 160 grams of loose marijuana and 134 grams packaged in ziplocks from the dining room table; 170 grams in ziplock bags from the floor next to the dining room table; 146 loose grams and 106 grams packaged in 46 ziplock bags from the kitchen countertop; 172 grams packaged in 47 ziplocks contained in freezer bags from a trash can at the top of the stairs to the second floor; 78 additional loose grams in a sandwich bag from the same trash can; ten grams in two ziplocks lying on the stairs themselves; a ziplock containing six grams from behind a bookcase in the right rear bedroom; and one ziplock from the person of a codefendant as well as seven grams from behind where he was seated. From the officers' observations, "bagging of marijuana was going on" in the kitchen and dining room area, involving what one officer described as "massive amounts of ... marijuana [in plain view]." Also seized was over $900 in cash. Appellant Bolden was arrested on the second floor standing in the hallway. Appellant Andrews was arrested downstairs lying on the floor, partially in a closet.

Bolden was the lessee of the house and lived there with her children. Andrews lived in a downstairs bedroom with Bolden's permission. Patricia Baker, a friend of Andrews and Bolden, had come to the house that day to visit Andrews. She testified that she and Andrews left the house together and remained away for two hours or more. In doing so, they left the front door unlocked. Before leaving, Baker had observed no marijuana or drug activity in the house. She and Andrews returned to the house approximately five minutes before the police arrived. The trial judge credited Baker's testimony as just described.

## II.

In challenging the sufficiency of the evidence, appellants face a difficult burden. We examine the record in the light most favorable to the government, drawing all reasonable inferences in the prosecution's favor. *See Cash v. United States,* 700 A.2d 1208, 1211 (D.C.1997). We defer to the right of the judge, as the trier of fact, to determine credibility and weigh the evidence. *See Mitchell v. United States,* 683 A.2d 111, 114 (D.C.1996). We may reverse only if there is "no evidence upon which a reasonable mind could fairly conclude guilt beyond a reasonable doubt." *Harris v. United States,* 668 A.2d 839, 841 (D.C. 1995).

## A.

■ Bolden contends that she could not fairly be convicted either as a principal (*i.e.*, on a theory of actual or constructive possession) or as an aider and abettor. The government counters that she could properly be found guilty as an aider and abettor. We agree with the government.

■ To establish that Bolden aided and abetted the drug possession, "the government was required to offer proof that: (a) a crime was committed by someone; (b) [Bolden] assisted or participated in its commission[;] and (c) [her] participation was with guilty knowledge." *Garrett v. United States*, 642 A.2d 1312, 1316 (D.C. 1994) (quoting *Wright v. United States*, 508 A.2d 915, 918 (D.C.1986)). Although mere "presence at the scene of a crime, even when coupled with knowledge that a crime is being committed, is generally not enough to constitute aiding and abetting," *Montgomery v. United States*, 384 A.2d 655, 658 (D.C.1978), "presence . . . plus conduct which designedly encourages or facilitates a crime will support an inference of guilty participation [in the crime] as an aider and abettor." *Garrett*, 642 A.2d at 1317 (citations omitted).

■ Here, the magnitude and duration of the drug activity taking place in the house while Bolden was present as the lessee and main occupant enabled Judge Webber reasonably to find that she both knew of the possession of the marijuana and, by facilitating it, had associated herself with the unlawful activity. First, as to knowledge, the judge could readily find that in a house thick with the smell of burning marijuana, the activity of five men smoking and packaging the drug did not escape Bolden's knowledge. Indeed, because the smoke appeared to pervade the house and loose and packaged marijuana were found upstairs as well, it was a reasonable inference that some of the smoking may have occurred there, where Bolden, according to her testimony and Baker's, spent most of her time. This is not to suggest that Bolden herself had been smoking or handling the marijuana; the evidence does not support that inference. But actual use or possession *is not* necessary to show aiding and abetting. *See, e.g., Greer v. United States*, 600 A.2d 1086, 1088 (D.C.1991). Bolden admitted that she knew the smell of marijuana, and the judge was not obliged to accept her testimony that she was unaware of its presence because she was asleep all the while the activity—and the general commotion of fourteen people in the house— was taking place. Furthermore, "[t]he natural inference is that those who live in a house know what is going on inside, particularly in the common areas," *United States v. Jenkins*, 289 U.S.App. D.C. 83, 87, 928 F.2d 1175, 1179 (1991), and particularly when no effort has been made by the main actors to conceal their activity.

Equally reasonable is the trial judge's finding that Bolden had made the house available to others for the illicit activity. She was the lessee and, as such, the person with the authority to control access to and use of the premises. No argument was made, certainly none the judge was obliged to credit, that she was disabled from exercising her power to eject the temporary occupants during the two hours or more that the activity continued. In *Greer, supra*, the defendant argued—as Bolden does—that even though the apartment belonged to her, her "mere presence" in close proximity to drugs packaged for distribution was insufficient to convict her. We responded that Greer's "presence at the scene is not what ma[de] her an aider and abettor":

The critical element of the government's proof is the fact that appellant made her apartment available to others

for the intended distribution of cocaine. That was enough to make her an aider and abettor of possession with intent to distribute . . . .

600 A.2d at 1088. Here Judge Webber found implausible the supposition "that approximately five males would enter Bolden's house sometime between two and four o'clock in the daylight hours to smoke and package . . . large amounts of marijuana . . . without [her] . . . consent." Bolden, who lived in the house with her children, acknowledged that she kept the door to the house locked most of the time and that generally "nobody" had "access to [the] house" without her permission. Although the judge did not infer that Bolden herself had opened the door to allow the men entry—he credited Baker's testimony that she had left the door open when leaving—he reasonably could find, and did, that an occupant and leaseholder otherwise as conscious of her security as Bolden would not have unwillingly let outsiders occupy large portions of her house for up to two hours to package and smoke marijuana without taking steps to stop them. Even if Bolden only acquiesced in the conduct, she facilitated activity of a kind that depends on privacy, at least from the eyes of law enforcement, thereby making herself an aider and abettor. *See id.* ("[A] reasonable juror could find from the evidence that appellant facilitated, and therefore aided and abetted, the possession of cocaine by others with intent to distribute it"); *see also Earle v. United States,* 612 A.2d 1258, 1270 (D.C.1992); *United States v. LaGuardia,* 774 F.2d 317, 319 (8th Cir. 1985) ("The jury reasonably could find that as the lessee and an occupant of the apartment, [codefendant Gato] had control of the premises and permitted areas of the home to be used in the concealment of the drugs."). Were we to require—with our dissenting colleague—more direct or immediate involvement in the illicit activity to sustain Bolden's conviction, we would ignore this important purpose of accomplice liability to punish criminal enabling.

**B.**

■ We reach a difference conclusion as to Andrews. The government argues that he constructively possessed the marijuana or, alternatively, aided and abetted the possession. To establish constructive possession there must be direct or circumstantial evidence that the accused "(1) knew the location of the drugs, (2) had the ability to exercise dominion and control over them, and (3) intended to exercise such dominion and control." *Earle,* 612 A.2d at 1265. Mere proximity to illegal drugs is not enough to prove constructive possession when "an individual is one of several people found by the authorities on the premises together with the substance." *Wheeler v. United States,* 494 A.2d 170, 172 (D.C.1985); *see also Bernard v. United States,* 575 A.2d 1191, 1195 (D.C.1990). There must be "something more in the totality of the circumstances—a word or deed, a relationship or other probative factor—that, considered in conjunction with the evidence of proximity and knowledge, proves beyond a reasonable doubt that the [person] *intended* to exercise dominion or control over the drugs, and was not a mere bystander." *Rivas v. United States,* 783 A.2d 125, 128 (D.C.2001) (en banc) (emphasis in original).

■ In arguing that Andrews constructively possessed the marijuana, the government relies on the officers' observation on entering that a cloud of marijuana smoke filled the rooms and that Andrews was found lying in front of a closet in his bedroom. This evidence alone does not prove that he had the requisite connection with the drugs. Judge Webber credited testimony that Andrews had returned to the house with Baker only five minutes

before the police entered, and that Baker had seen no drug activity in the house before they left. The police found no marijuana or drug packaging paraphernalia in Andrews' bedroom or on his person. Baker testified that Andrews had gone to his room directly on returning, and no other evidence linked him or his bedroom to the people in the kitchen or the drugs found in other parts of the house. While the evidence fairly supported an inference that Andrews knew the illicit activity was going on, his presence in the house so briefly while it occurred was insufficient to impute to him "some appreciable ability to guide the destiny of the drug[s]" being packaged and smoked by others. *United States v. Staten,* 189 U.S.App. D.C. 100, 105, 581 F.2d 878, 883 (1978); *see Greer,* 600 A.2d at 1087–88 (holding evidence insufficient to support finding of constructive possession where the facts did not show that defendant " 'had any personal role in the handling of the cocaine' " but, "[a]t most · · · that others came to her apartment to sell drugs, with her permission, [and] there was no proof that she had any connection with the drugs themselves") (citation omitted).

■ Nor was the evidence sufficient to convict Andrews as an aider and abettor. Unlike Bolden, he was not named on the lease and, indeed, paid no rent; he merely compensated Bolden—in a manner of speaking—by doing household chores. Although the trial judge found that Andrews had the authority to admit personal guests (such as Baker) to the house and to exercise some control over the premises, he was not a leaseholder. Andrews was himself a guest to the house, and, accordingly, his authority to admit or eject other guests was plainly inferior to that of the leaseholder, Bolden. Moreover, unlike Bolden who had been in the house throughout the drug activity, Andrews had been present

for only five minutes when the police arrived. In these circumstances, his failure to take steps to end the illicit activity—on which the government relies—cannot be viewed as facilitation without stretching that aspect of aiding and abetting to the breaking point.

Accordingly, the judgments of conviction are

*Affirmed as to Bolden, and reversed as to Andrews; case remanded with directions to enter a judgment of acquittal as to Andrews.*

RUIZ, Associate Judge, concurring in part and dissenting in part.

I agree that the evidence is insufficient to convict James Andrews of marijuana possession under a theory of constructive possession, or as an aider and abettor. Because there is no meaningful distinction in the nature or quantity of evidence presented against Tawanna Bolden that crosses the threshold of reasonable doubt, I conclude that the evidence is insufficient to convict her under either theory of liability as well. Thus, I would reverse Bolden's conviction of marijuana possession, and dissent from that part of the Per Curiam opinion affirming her conviction.

To frame my analysis, I begin by including some facts that are not recited in the Per Curiam opinion. Patricia Baker, the friend whose testimony was credited by the trial court, testified that Bolden was seriously ill with brain cancer and was "always sick" with symptoms that included fever, feeling cold, vomiting, and weakness. As a result, according to Baker, Bolden "sleeps all the time" and doesn't "have any energy." Baker corroborated Bolden's testimony that on the day in question, before Baker and Andrews went out of the house leaving the front door unlocked, Bolden had come downstairs briefly to prepare breakfast for her children, and had

returned to her second floor bedroom to sleep, as was her custom. Baker also testified that when she and Andrews returned to the house one to two hours later, she had looked into the second floor bedroom and seen Bolden asleep, curled up under the covers. It was only a few minutes later that the police officers broke down the back door of the house, surprising the men who had been packaging marijuana in the downstairs kitchen, and rushed up the steps to catch them before they could hide or attempt escape. Bolden testified that she was awoken by the screams of her young children who, scared by the police onslaught, had come running up the stairs to where Bolden was sleeping on the second floor. Baker, who was in the second floor bathroom when the police arrived, corroborated this aspect of Bolden's testimony as well, saying that as she came out from the bathroom, she saw Bolden emerge sleepily from her bedroom into the hall, looking scared and calling for her young son. No one testified to the contrary.

Notwithstanding Bolden's and Baker's testimony, my colleagues conclude that "the magnitude and duration of the drug activity taking place in the house while Bolden was present as the lessee and main occupant" were sufficient to enable the trial court to find that Bolden knew about the marijuana in the house and had facilitated the use of her house for the unlawful activity, thus becoming criminally liable as an aider and abettor. See *ante* at 535. I do not question that the police's observation of a cloud of marijuana smoke and drug activity upon their arrival would, in the usual case, provide a factual basis from which the finder of fact could reasonably infer that an occupant of the house would similarly have been aware of the marijuana smoke. But that inference is not reasonable on the facts of this case. Bolden was asleep in a second floor bedroom when the

police arrived. Even though there was, at most, a two-hour lapse between the time when Baker saw Bolden go upstairs to sleep and Baker's return when she saw Bolden still asleep in her room—two hours during which it is theoretically possible that Bolden could have awoken and become aware of the marijuana smoke— there is no evidence in the record as to when the men entered the house during that period or as to when the marijuana smoke would have permeated the house so that it would have been noticeable on the second floor. Nor is there any evidence that Bolden in fact was awake at any time during those two hours. Baker's testimony strongly implies that she was not. Any inference, therefore, that Bolden had knowledge of the marijuana smoke is sheer speculation.

Knowledge of criminal activity is a prerequisite, but by itself is not enough; aiding and abetting requires some affirmative assistance to commission of the crime. Usually assistance is shown by some action, even if slight, that abets in commission of the crime. To premise criminal liability on in action, as the government proposes here, there must be circumstances which in context support an inference that by failing to act a person associated with the venture and participated in it as in something that he or she wished to bring about. See *Settles v. United States*, 522 A.2d 348, 357 (D.C.1987) (quoting *Nye & Nissen v. United States*, 336 U.S. 613, 619, 69 S.Ct. 766, 93 L.Ed. 919 (1949)); *cf. Montgomery v. United States*, 384 A.2d 655, 659 (D.C.1978) (quoting *United States v. Garguilo*, 310 F.2d 249, 253 (2d Cir. 1962) ("There may even be instances where the mere presence of a defendant ... will permit a jury to be convinced ... that the defendant sought by his action to make it [the crime] succeed—for example, the attendance of a 250–pound bruiser at a

shakedown as companion to the extortionist ....") (internal quotation omitted)). Failure to act when action would be expected could make innocent presence less likely. *See Settles,* 522 A.2d at 357 ("[M]ere presence at the scene of the crime, without more, is generally insufficient to prove involvement in the crime, but it will be deemed enough 'if it is intended to [aid] and does aid the primary actors.'") (alteration in original) (citations omitted).

Turning to the facts of this case, a factfinder could begin by assuming that a person with legal authority or responsibility would take steps to assert control over property and to keep her children safe from harm. But such assumption needs to be tested against the facts in evidence because a person's inaction could be the result of something other than the wish to assist the commission of crime. Fear, a sense of loyalty to family or friends, and physical or mental incapacity, to name a few, could also explain why a person would not try to put a stop to illegal activity. The inference that inaction equates to acquiescence and assistance is particularly strained here, where Bolden did not act with consciousness of guilt when the police arrived and her serious illness and sleeping habits call into question her ability to notice what is going on in other areas of the house and take quick action in response. Although the circumstances were undoubtedly suspicious, suspicion alone does not support a finding of guilt without probative evidence that Bolden had the requisite intent. *See Greer v. United States,* 600 A.2d 1086, 1087–88 (D.C.1991) (discounting evidentiary value of suspicious circumstances). To conclude that Bolden intended to aid and abet on this record is

not a reasonable inference from the evidence, but requires the factfinder to cross into impermissible speculation.

This is not a case like *United States v. Jenkins,* 289 U.S.App. D.C. 83, 928 F.2d 1175 (1991), where the court found the evidence "just barely" sufficient to convict a homeowner of conspiracy to possess cocaine relying on the "natural inference ... that those who live in a house know what is going on inside, particularly in the common areas." *Id.* at 87, 928 F.2d at 1179. Present in *Jenkins*—but not the case here—was drug activity carried out not only in the common areas of the house, but by persons who lived in the house and, the factfinder could infer, "routinely" engaged in drug dealing on the premises in the view of the other residents. *Id.* Moreover, the homeowner was "closely associated" with one of the drug dealers. *Id.* at 86, 928 F.2d at 1178. Of particular importance to the court in *Jenkins* was .38 caliber ammunition found in the bedroom of the homeowner which, coupled with expert evidence that people who have drugs usually also have firearms, gave further weight to the homeowner's complicity in the drug activity. *See id.* at 88, 928 F.2d at 1180. Under those circumstances, the inference that the homeowner is aware of drug dealing in her house and has facilitated use of the premises can reasonably be sustained. In this case, on the other hand, all we have is drug activity of, at most, two hours duration, carried out by persons who do not live in the house, and no evidence of any contraband—neither drugs nor weapons—associated with Bolden's immediate living space.[1] Nor is this case like *Greer,* where the tenant personally opened the door for the drug dealers and was found

---

1. The government's theory was that the marijuana was brought to the house by the drug dealers that day and that the marijuana found on the second floor had been dropped or

hurriedly stashed away in a trash can and behind a bookcase as the men in the kitchen ran upstairs when the police broke in through the door.

by the police in their company, attempting to hide in a closet full of drug paraphernalia while the drug dealers were dumping drugs out the window. *See Greer,* 600 A.2d at 1087. Because the tenant in *Greer* obviously had knowledge of the drug activity in her home, her action in allowing the drug dealers into the apartment and staying with them fully supported an inference that she facilitated their activity. There is no comparable evidence in this case that Bolden knew of the marijuana or made her home available to drug dealers. Here the fact-finder must have a reasonable doubt about what Bolden knew and why she acted (or failed to act) as she did. *See Rivas v. United States,* 783 A.2d 125, 134 (D.C.2001) (en banc) (stressing this court's obligation to critically scrutinize the evidence to ensure that a rational fact-finder could find guilt beyond a reasonable doubt).

Beyond my conclusion that the evidence is insufficient, I am troubled by the majority's approach in deciding to affirm the conviction. The trial court's reasoning in finding Andrews and Bolden guilty was brief and to the point: The trial judge found Andrews guilty because he was a "lawful occupant" of the house and had "the power to admit others to the premises and to exercise control over the premises [ ] and its use." As to Bolden, the trial judge noted that she too was a "lawful occupant," that her name was on the lease documents and that she "had the authority to control access to, and use of, the premises." The trial court concluded that it was "highly improbable" that five men "would enter Ms. Bolden's house . . . in the daylight hours, to smoke and package . . . large amounts of marijuana . . . without [her] knowledge and consent." [2]

Thus, the record is clear that, as with Andrews, the trial court relied on Bolden's status as lessee and lawful occupant with the authority to control the premises to infer acquiescence and find guilt. My colleagues recognize that the trial judge's stark reasoning was incorrect and did not provide legal support for Andrews's guilt, but conclude it is sufficient to sustain Bolden's guilty verdict. But what is the difference in the evidence presented against them? Andrews and Bolden both resided in the house and both, as the trial judge found, had authority to control the premises. There is the one difference, emphasized by my colleagues: Bolden was the lessee, whereas Andrews was a roomer. But legal status, without more, is insufficient to prove guilt. If mere presence (*i.e.,* knowledge of the commission of crime in one's presence) at the scene of a crime is insufficient without "conduct which designedly encourages or facilitates a crime" in order to support an inference of "guilty participation as an aider and abettor," *Garrett v. United States,* 642 A.2d 1312, 1317 (D.C.1994), bare status must be less so as it does not even imply knowledge of the commission of crime in one's presence. To hold otherwise is to make a homeowner or lessee strictly liable criminally for the illegal activities of others conducted on the premises over which the home owner or lessee has authority.

It also is evident from the record of this bench trial that the trial judge did not make the credibility determinations and fact-findings that would be necessary to support the alternative conclusion proposed by my colleagues, that Bolden became aware of the marijuana smoke with time to act such that her inaction would imply acquiescence. In doing so, they en-

---

**2.** The trial court's conclusion is undermined by the testimony it credited that Bolden usually kept the door locked and that it was Baker and Andrews who left it unlocked when they left the house that morning.

gage in appellate fact-finding and overstep our appellate function of reviewing trial court action. A trial court need not make specific fact-findings and in the absence of findings we must affirm if the evidence of record is sufficient to support the result. That does not mean, however, that on appellate review we can ignore fact-findings and credibility determinations that were made by the trial judge. The trial judge credited Baker's testimony that it was she and Andrews who had left the door unlocked when they left the house, even though Bolden usually kept it locked, and that they had returned home only five minutes before the police arrived, at which time Baker saw a cloud of smoke that smelled like marijuana. The trial court made no finding of fact as to whether Bolden became aware that there was marijuana in her house from the cloud of smoke that Baker and the police discovered upon their arrival, nor as to when she would have noticed it so that a reasonable inference could be drawn that, knowing of the presence of marijuana in her house, she acquiesced in the drug activity being carried out by others. To the extent that Baker's credited testimony was relevant to these questions, however, her testimony that Bolden went to sleep before Baker left and was sleeping when she returned supports the opposite inference: that Bolden was unaware of, and did not acquiesce in, the drug activity. Therefore, the inference on which my colleagues rely has no factual predicate in the evidence heard and credited by the trial judge to affirm Bolden's conviction.

Therefore, I dissent because the reasoning provided by the judge is incorrect as a matter of law, and an alternative rationale is not supported by the evidence.